COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Judges Humphreys, O'Brien and Retired Judge Willis[*]

MICHAEL BELLFLOWER

v.      Record No. 1464-15-2

HOPEWELL DEPARTMENT
 OF SOCIAL SERVICES

MEMORANDUM OPINION[**]
PER CURIAM
MARCH 15, 2016

FROM THE CIRCUIT COURT OF THE CITY OF HOPEWELL
Nathan C. Lee, Judge

(John A. Kirkland, on brief), for appellant. Appellant submitting on
brief.

(Kevin B. O'Donnell; Joan M. O'Donnell; Christopher B.
Ackerman, Guardian *ad litem* for the minor children, on brief), for
appellee. Appellee and Guardian *ad litem* submitting on brief.

Michael Bellflower (father) appeals orders terminating his parental rights to two of his

children, H. and M., and approving their foster care plans with the goal of adoption. Father argues

that the circuit court erred by finding that the evidence was sufficient to (1) terminate his parental

rights pursuant to Code § 16.1-283(B) and (C)(2) because "the conditions which led to the neglect

and abuse could be substantially corrected or eliminated to allow the children's safe return;" and

(2) approve the permanency plan goal of adoption because father "had substantially complied" with

recommendations and requests of the Hopewell Department of Social Services (the Department).

Upon reviewing the record and briefs of the parties, we conclude that the circuit court did not err.

Accordingly, we affirm the decision of the circuit court.

---

[*] Retired Judge Willis took part in the consideration of this case by designation pursuant
to Code § 17.1-400(D).

[**] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

BACKGROUND

We view the evidence in the light most favorable to the prevailing party below and grant to it all reasonable inferences fairly deducible therefrom.  See Logan v. Fairfax Cty. Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 463 (1991).

In September 2013, father, his wife, and his five children[1] moved from New Kent County to the City of Hopewell.  Prior to their move, on September 4, 2013, the New Kent County Juvenile and Domestic Relations District Court (the New Kent J&DR court) entered child protective orders, which focused on the three youngest children.[2]  The New Kent J&DR court also found that the children were abused and neglected.  The New Kent Department of Social Services notified the Department, which then became involved with the family.  On October 24, 2013, the Hopewell Juvenile and Domestic Relations District Court (the Hopewell J&DR court) entered child protective orders, which had the same requirements as the New Kent J&DR court's orders.

The Department provided several services to the family, including paying for the younger children's day care, assisting with rent in December 2013 and January 2014, and providing food vouchers in January 2014.  The Department also paid for a psychological evaluation for father and offered him parenting classes.

The Department conducted several home visits.  On December 12, 2013, the social worker found that the children were not in school and that the family was low on food.  The family also needed financial assistance with rent.  On January 13, 2014, the social worker found that the children were not in school again and that an unidentified woman was in the house.  Despite the protective order's prohibition about other individuals living in the home, father asked the social

---

[1] This appeal concerns father's two oldest children, M. and H., who are twins.  Father's wife is not the biological mother of the two oldest children.

[2] There was evidence that the New Kent Department of Social Services had been working with the family for a while.

worker if the woman could continue to live with them. He explained that she could help with the rent payments. On February 24, 2014, the social worker learned that the city had turned off the family's water. On March 12, 2014, M. was sick at school.[3] The social worker saw father pick up the child from school and walk him home. The social worker offered to give them a ride, but father refused. On March 13, 2014, the social worker visited the home and found that M. and H. frequently were responsible for the care of the younger children. At the time, M. and H. were nine years old.

On March 19, 2014, a family partnership meeting was held. The Department discussed that father was not complying with the protective orders. Father threatened to leave Virginia with the children.

The Department removed the children from father's care on March 19, 2014, and the Hopewell J&DR court entered an emergency removal order on March 20, 2014. The Department required father to participate in parenting classes, demonstrate financial stability, maintain stable employment, maintain a stable housing environment, participate in individual counseling, follow the counselor's recommendations, and visit with the children.

In June 2014, the Department learned that father's electricity and water had been turned off for failure to pay the bills. In August 2014, father lost his job and was evicted from his home. He and his wife moved back to New Kent County to live with his mother and stepfather, who is a registered sex offender. The Department informed father that the children could not be placed in the home as long as the stepfather lived there.

Father completed the parenting classes, but did not demonstrate an understanding of appropriate expectations for the children, family roles, and the growth and development of children.

---

[3] Father knew that M. was sick at the bus stop that morning, but still sent him to school.

Since father was not making progress toward the goal of return home, the Hopewell J&DR court approved the foster care plans with the goals of relative placement/adoption. On February 4, 2015, the Hopewell J&DR court deleted the goal of relative placement after the Department contacted several relatives, but they were unwilling or unable to care for the children.

On June 1, 2015, the Hopewell J&DR court entered orders terminating father's parental rights to M. and H. Father appealed the cases to circuit court.

On August 24, 2015, the parties appeared before the circuit court. Father testified that he was still living with his mother and stepfather, along with other family members, in New Kent County. Father said that he was working in Hopewell and earning $600 per month. He also indicated that he was looking for housing in Hopewell, but had not found anything for several months. During cross-examination, father admitted that he was not in a position to take M. and H. At the conclusion of all of the evidence and argument, the circuit court found that it was in the children's best interests to terminate father's parental rights to M. and H. and approve the foster care plans with the goal of adoption. The circuit court entered orders reflecting its rulings on that day. This appeal followed.

ANALYSIS

Father argues that the circuit court erred in finding that the evidence was sufficient to terminate his parental rights to M. and H. pursuant to Code § 16.1-283(B) and (C)(2) because "the conditions which resulted in the neglect and abuse could . . . be substantially corrected or eliminated to allow the children's safe return." Furthermore, father contends the circuit court erred in approving the foster care plans with the goal of adoption because he had "substantially complied" with the Department's requests.

"Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support

it." Martin v. Pittsylvania Cty. Dep't of Soc. Servs., 3 Va. App. 15, 20, 348 S.E.2d 13, 16 (1986) (citation omitted). When considering termination of parental rights, "the paramount consideration of a trial court is the child's best interests." Logan, 13 Va. App. at 128, 409 S.E.2d at 463.

The circuit court terminated father's parental rights pursuant to Code § 16.1-283(B) and (C)(2). Code § 16.1-283(B) states a parent's parental rights may be terminated if:

> 1. The neglect or abuse suffered by such child presented a serious and substantial threat to his life, health or development; and
>
> 2. It is not reasonably likely that the conditions which resulted in such neglect or abuse can be substantially corrected or eliminated so as to allow the child's safe return to his parent or parents within a reasonable period of time. In making this determination, the court shall take into consideration the efforts made to rehabilitate the parent or parents by any public or private social, medical, mental health or other rehabilitative agencies prior to the child's initial placement in foster care.

Whereas, Code § 16.1-283(C)(2) states that a court may terminate parental rights if:

> The parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed twelve months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end.

In Toms v. Hanover Dep't of Soc. Servs., 46 Va. App. 257, 616 S.E.2d 765 (2005), this Court explained the differences between termination of parental rights pursuant to Code § 16.1-283(B) or Code § 16.1-283(C)(2). "[S]ubsection B [of Code § 16.1-283] 'speaks prospectively' and requires the circuit court to make a judgment call on the parent's ability, following a finding of neglect or abuse, to substantially remedy the underlying problems." Id. at 270-71, 616 S.E.2d at 772 (quoting City of Newport News Dep't of Soc. Servs. v. Winslow, 40 Va. App. 556, 562-63, 580 S.E.2d 463, 466 (2003)).

> In contrast, subsection C termination decisions hinge not so much on the magnitude of the problem that created the original danger to the child, but on the demonstrated failure of the parent to make reasonable changes. Considerably more "retrospective in nature," subsection C requires the court to determine whether the parent has been unwilling or unable to remedy the problems during the period in which he has been offered rehabilitation services.

Id. at 271, 616 S.E.2d at 772 (quoting Winslow, 40 Va. App. at 562-63, 580 S.E.2d at 466).

Father argues that he was "improving his situation." He had a job in Hopewell and was looking for suitable housing. He attended the parenting classes, as instructed by the Department. He was receiving SNAP and Medicaid benefits. He asserts that the circuit court should not have terminated his parental rights or approved the goal of adoption because he was substantially correcting the conditions that led to the children being placed and remaining in foster care. He further contends he substantially complied with the Department's requests because he had a job and went to parenting classes.

The children were placed in foster care because father was unable to provide adequate shelter and food for them. At the time of the circuit court hearing, father still was unable to provide for M. and H. Father acknowledged this fact at trial. While the children were in foster care, father lost his job and was evicted from his home. At the time of the circuit court hearing, he did not have suitable housing. The children could not live with him at his mother and stepfather's house since his stepfather is a registered sex offender. Although father had a job at the time of the circuit court hearing, he could not explain what his expenses were, other than a cell phone bill. The circuit court noted that father "failed to demonstrate an understanding of appropriate expectations of children, the grown and development of children or family roles despite completing parenting education classes." Therefore, contrary to father's arguments, he had not substantially remedied the conditions which led to the children being placed and remaining in foster care. Despite all of the services provided by the Department, father was not able to provide and care for the children and eliminate the neglect or

abuse. The circuit court found that M. and H. had "been in foster care for more than twelve months and the father ha[d] made little progress towards the goal of return home."

While in foster care, M. and H. received counseling and benefitted from mentors provided to them. The children also improved their socialization skills and self-esteem.

"It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." Kaywood v. Halifax Cty. Dep't of Soc. Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990).

Based on the record, the circuit court did not err in terminating father's parental rights to M. and H. and approving the foster care plans with the goal of adoption.

## CONCLUSION

For the foregoing reasons, the circuit court's ruling is affirmed.

Affirmed.